IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CAMERON REED, individually, and on behalf of all others similarly situated; JOHN SIEBUHR, TIMOTHY KEGGINS, JEFFREY JUDKA, CAROLINE HURLEY, EUGENE ROSENBURG, LAUREN MULLIS, VIRGINIA GILLELAND, and ROBERT MEYERS, <br><br> Plaintiffs, <br><br> vs. <br><br> ALN MEDICAL MANAGEMENT LLC, BETHANY MEDICAL CLINIC OF NEW YORK, PLLC, LONG VIEW SYSTEMS CORPORATION (USA), NATIONAL PAIN AND SPINE CENTERS, LLC, and HOAG CLINIC, <br><br> Defendants. | **4:25CV3067** <br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards to Plaintiffs and Final Approval of Class Action Settlement (Filing No. 93), as well as Robin Babu's Objection to the proposed settlement. (Filing No. 95.) Upon hearing the matter at a final approval hearing, and having considered all of the other files, records, documents, materials and proceedings in this suit, Plaintiffs' motion will be granted, and the objection will be overruled.

As further explained below, Plaintiffs' submissions and other materials in the case file establish that class certification is appropriate under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3); the proposed settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2); and the requested attorneys' fees and costs, and the class representative service award are reasonable under Fed. R. Civ. P. 23(h). The notice requirements of 28 U.S.C. § 1715 have been satisfied and ninety days have passed since notice was given to the appropriate individuals.

**BACKGROUND**

Defendant ALN Medical Management LLC is a "a healthcare advisory firm that provides services such as physician, facility, and non-participating provider hospital billing, professional coding, claims recovery, review of billing practices, and credentialing to other healthcare-related Clients[.]" (Filing No. 64-1 at 2.)  ALN's clients include Allied Physicians Group, PLLC, Bethany Medical Clinic of New York, PLLC, Hoag Clinic, and National Spine and Pain Centers, LLC, who are co-defendants in the present action or in related litigation.  (Filing No. 64-1 at 2.)

Defendant ALN held the private information of Plaintiffs Cameron Reed, Eugene Rosenberg, Lauren Mullis, Jeffrey Judka, Virginia Gilleland, Robert Meyers, Caroline Hurley, and Timothy Keggins, whose private information was compromised in a data breach in March of 2024. (Filing No. 64-1 at 3.)  "That information included names, Social Security numbers, drivers' license numbers, government-issued ID numbers (e.g., passports, state ID cards), financial information (e.g., account number, credit or debit card number), medical information, and health insurance information." (Filing No. 64-1 at 3.)

ALN apprised Plaintiffs, along with approximately 1.8 million current and former patients of Defendant ALN's clients, of the data breach in March 2025.  (Filing No. 64-1 at 3.)  On March 25, 2025, Plaintiff Cameron Reed filed the first putative class action, which alleged the breach exposed private information, entitling him to money damages and injunctive relief.  (Filing No. 1.)  On June 11, 2025, the Court consolidated Plaintiffs' class actions, and Plaintiffs filed a consolidated amended class action complaint on June 25, 2025, alleging negligence, breach of contract, breach of third-party beneficiary contract, unjust enrichment, and violations of the California Consumer Privacy Act.  (Filing No. 36.)

After mediating the dispute on August 4, 2025, Plaintiffs and all defendants—except Defendant Long View Systems Corporation (USA)—agreed to settle Plaintiffs' claims against the settling defendants and other parties.  (Filing No. 64-1 at 4.)  The parties released by the settlement agreement specifically include:

> Defendant ALN, Health Prime International, LLC, HPI Holdco, LLC, Lotus HPI Buyer, Inc., Lotus HPI Intermediate, Inc., Lotus HPI Parent, Inc., Lotus HPI TopCo, L.P., Lotus HPI TopCo GP, LLC, Aquiline Financial Services Fund V,

L.P., Aquiline Capital Partners LP, Aquiline Lotus Co-Invest L.P., Aquiline Capital Partners V GP (Offshore) L.P., Aquiline Capital Partners V GP (Offshore) Ltd., AFSF V Co-Invest GP Ltd., and their past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, officers, directors, managers, shareholders, members, employees, servants, attorneys, accountants, insurers, reinsurers, benefit plans, partners, predecessors, successors, managers, administrators, executors, trustees, and any other person acting on their behalf, in their capacity as such; and

Defendant ALN's Clients, including, but not limited to, Allied Physicians Group, PLLC, Bethany Medical Clinic of New York, PLLC, Hoag Clinic, and National Spine and Pain Centers, LLC, and their past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, officers, directors, shareholders, members, agents, employees, servants, attorneys, accountants, insurers, reinsurers, benefit plans, partners, predecessors, successors, managers, administrators, executors, trustees, and any other person acting on their behalf, in their capacity as such.

(Filing No. 64-1 at 12-13.)

On October 7, 2025, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement (Filing No. 63) pursuant to Fed. R. Civ. P. 23(e) to certify the settlement class, preliminarily approve the settlement agreement, and approve the form and manner of notice to the class. The Court granted the motion, conditional on the parties making required changes to the Claim Form and three forms of notice to comply with the due process requirements for notice of a proposed settlement of a class action. (Filing No. 88.) The Court, among other things, found that the action could be maintained as a class action, the prerequisites to class certification under Fed. R. Civ. P. 23(a) had been satisfied, and the certification of the settlement class was superior to the other available methods for the fair and efficient resolution of this controversy, because the questions of law and fact common to the class members predominated over any questions affecting individual members, as required by Fed. R. Civ. P. 23(b)(3). (Filing No. 88.) The Court certified the settlement class as:

All living individuals residing in the United States who were sent a notice from ALN Medical Management LLC of the Data Incident, which occurred in March of 2024, indicating their Private Information may have been impacted in the Data Incident (the "Settlement Class Members").

3

(Filing No. 88.)

The Court also designated class representatives, appointed settlement class counsel and a claims administrator, and scheduled a fairness hearing.  (Filing No. 88.)  The Court reviewed the notice submitted by the parties, and mostly approved the forms of notice submitted by the parties, with minor amendments to ensure the best notice practicable under the circumstances and compliance with Fed. R. Civ. P. 23 and the requirements of due process.  (Filing No. 88 at 6-7.)  With those amendments, the Court found that the parties' plan for directing notice to the class members was the best notice practicable under the circumstances and complied with Fed. R. Civ. P. 23 and due process.  (Filing No. 88.)

Pursuant to the Court's Preliminary Approval Order, the settlement administrator sent notice to identified class members, setting a deadline for the class members to request exclusion from the class or object to the settlement.  (Filing No. 93-2.)  1,554,295 of the 1,635,849 certified settlement class members likely received the Court-approved class action notice.  (Filing No. 93-2 at 5.)  The notice informed class members that they could opt out of the class action or submit objections to the Court of the Clerk, Defendant ALN's Counsel, and the Settlement Administrator by April 15, 2026.[1]  (Filing No. 93-2.)  Eleven timely and valid opt-out requests were received. (Filing No. 98.)

Plaintiffs filed the present motion in advance of the fairness hearing, which was held on May 15, 2026.  One objection to the settlement was received by the Clerk of the Court on April

---

[1] The Preliminary Approval Order required that all objections set forth the following:  (1) the objector's full name, mailing address, telephone number, and email address (if any); (2) the case name and number; (3) documentation sufficient to establish membership in the Settlement Class; (4) all grounds for the objection, accompanied by any known legal support for the objection; (5) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector filed the objection, the caption of each case in which the objector made such objection, and a copy of any orders related to the prior objection; (6) the identity of all counsel who represent the objector, and whether they would appear at the Final Approval Hearing, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the settlement and/or application for attorneys' fees, costs, and service awards; (7) the number of times the objector's counsel and/or law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case and a copy of any orders related to the objection within the preceding five years; (8) a list of persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (9) a statement confirming whether the objector or their counsel (if any) intends to personally appear and/or testify at the Final Approval Hearing; and (10) the objector's signature (an attorney's signature is not sufficient). (Filing No. 88.) This information was also contained in the notice.  (Filing No. 93-2.)

20, 2026, but the objection is postmarked April 15, 2026  (Filing No. 95.)  Class counsel received the objection on April 15, 2026.  (Filing No. 94.)  However, the objection did not contain all the information required by the Court's Preliminary Approval Order and the notice.  No class members or objectors appeared at the hearing.

## DISCUSSION

### I.    Final Approval of Class Action and Consideration of Mr. Babu's Objection

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval.  Fed. R. Civ. P. 23(e).  If the proposed settlement would bind the class members, the Court may approve it only after a hearing and upon finding that it is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  However, because a class action settlement is a private contract negotiated between the parties, it is presumptively valid. *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (9th Cir. 2005); *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013). Therefore, the Court has neither the duty nor the right to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

To determine if a settlement is fair, reasonable, and adequate, courts consider whether "the class representatives and class counsel have adequately represented the class," "the proposal was negotiated at arm's length," "the relief provided for the class is adequate," and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). Other factors to consider include: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement[.]" *Swinton v. SquareTrade, Inc.,* 454 F. Supp. 3d 848, 860 (S.D. Iowa 2020) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)) (internal quotations omitted). Having considered these factors, along with all arguments and materials provided to the Court, the Court finds the proposed settlement is fair, reasonable, and adequate.

The Court finds that class representatives and counsel have fairly and adequately represented the interests of the class members. Class representatives provided essential information to class counsel, collected documents, and conferred with counsel about settlement negotiations. (Filing No. 93-1.) For its part, counsel has considerable experience with consumer class actions, including data breach cases. (Filing No. 64-2; Filing No. 93-1.) *See Swinton*, 454 F. Supp. 3d at 876 (finding class counsel adequate where they were "accomplished litigators who ample experience in class actions and complex litigation"). Counsel used this experience to negotiate a favorable settlement. (Filing No. 93-1.) Moreover, the settlement agreement was the product of good-faith, arm's-length negotiations by the class representatives, the settling defendants, and counsel. (Filing No. 93-1 at 2-3.) Negotiations between the parties occurred over several months and involved the exchange of discovery and information. (Filing No. 64-2.) The parties also prepared for, and participated in, mediation. (Filing No. 64-2.) Following the mediation, the parties negotiated, drafted, and finalized the settlement agreement. (Filing No. 64-2.)

Further, the "relief provided for the class"—a total settlement value of $4,000,000.00—is adequate, considering that Plaintiffs avoided potentially lengthy and complex litigation, with only a single objection. *See Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 230 (S.D. Iowa 2009) ("Such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement"). The settlement proposal treats class members equitably relative to each other by allowing members to submit claims for individualized documented losses with up to $5,000.00 in compensation for losses, or an estimated $50.00 pro rata payment, subject to pro rata increases or decreases from the net settlement fund and number of valid claims. (Filing No. 64-1 at 17-18.) Under this scheme, those who suffered more can be compensated equitably for those damages.

The settlement also bears a reasonable relationship to the case's merits. Plaintiffs acknowledge "significant risks and challenges" to succeeding on the merits that make the outcome of litigation uncertain. (Filing No. 93 at 16.) Specifically, Plaintiffs acknowledge that damages from a data breach in a complex class action lawsuit is an under-developed area of law, and data breach cases are risky, expensive, and complex. (Filing No. 93 at 16-17.) *See also Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 WL 3903550, at * 3 (D. Neb. Aug. 21,

2024) ("Data breach cases are complex, and would rely on extensive electronic discovery and potential discovery disputes, and expert analysis of the dark web and the information available on it."). The complexity and expense of further litigation offers support to final approval of the settlement.

Plaintiffs concede that Defendants' financial condition is neutral, as "ALN can withstand a judgment greater than the Settlement Amount[.]" (Filing No. 93 at 20.) However, the neutrality of this factor is not dispositive. *See Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir. 2017).

Finally, there has been little opposition to the settlement. Of the approximate 1.6 million certified settlement class members, there was only one objection and eleven opt-outs from the settlement. (Filing No. 98; Filing No. 95; Filing No. 93-2.) *See Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (determining fourteen objections from a settlement class of approximately 3.5 million households to be a "miniscule" amount of opposition). Therefore, the Court finds the proposed settlement is fair, adequate, and reasonable and merits final approval.

With respect to notice, the Court reaffirms its earlier finding that the form, content, and method of disseminating notice to the class members, as modified by the Court, was adequate and reasonable and constituted the best notice practicable under the circumstances. The parties complied with the Court's modifications and notice was given as approved in the Court's prior order. (Filing No. 88; Filing No. 93-2.) The notice was reasonably calculated to notify interested parties of this action and provide them with an opportunity to present their objections. *See Grunin*, 513 F.2d at 120; *Pollard v. Remington Arms Company, LLC*, 896 F.3d 900, 906 (8th Cir. 2018). The notice reasonably conveyed the needed information, and afforded a reasonable time for those interested to make appearances. *Grunin*, 513 F.2d at 120. It accurately characterized all the pertinent terms of the settlement agreement, including that the Court would consider approving the settlement and "attorneys' fees up to one-third of the Settlement Fund ($1,333,333.33), plus reimbursement of costs for Class Counsel, and Service Awards of $2,500.00 each to the eight Class Representatives." It also stated that the Settlement Fund would be used to pay administration costs. (Filing No. 93-2). Further, it afforded the class members a reasonable opportunity to object. (Filing No. 93-2.)

The settlement administrator sent 710,644 email notices to records with a valid email address.  (Filing No. 93-2 at 4.)  Of those 710,644 email notices, 146,942 emails were rejected, and the settlement administrator traced and mailed 146,942 postcard notices to those records.  (Filing No. 93-2 at 4.)  The settlement administrator initially mailed a total of 914,905 postcard notices to records with valid mailing addresses and no valid email address.  (Filing No. 93-2 at 4.)  Of those initial 914,905 postcard notices, 6,583 had to be re-mailed to updated USPS forwarding addresses.  (Filing No. 93-2 at 4.)  A total of 186,000 postcard notices were returned by USPS as undeliverable without a forwarding address, but the settlement administrator ran an advanced address search to produce an additional 114,783 updated addresses.  (Filing No. 93-2 at 4.)  Postcard notices were again emailed to these 114,783 addresses, and 37 of these notices were returned undeliverable a second time.  (Filing No. 93-2 at 4-5.)  Between the email and postcard notices, 95 percent of the notices were presumed to have been delivered.  (Filing No. 93-2 at 5.)

Eleven class members excluded themselves from the settlement. (Filing No. 98.) One class member objected.  (Filing No. 95.)  27,631 class members filed a claim, comprising a claim rate of 1.69 percent.  (Filing No. 93-2 at 6.)  "While low, the claims rate is not unusual for data breach cases like this."  *Weisenberger*, 2024 WL 3903550, at *3 (approximately 1.3% claim rate); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% claim rate); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-MD-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) (0.23% claim rate). The parties did their best to afford class members the opportunity to obtain relief.  Accordingly, these efforts satisfy the requirements of Fed. R. Civ. P. 23 and due process.

Before rendering final approval, the Court will consider the single objection received to the approval of the proposed settlement.  Mr. Babu, the father of a certified settlement class member, objects to final approval of the settlement on the basis of "actual harm suffered as a direct result of the data breach."  Specifically, Mr. Babu alleges that his daughter, a dependent minor, has already had her personal information used by an unauthorized third party to file a fraudulent tax return, and the settlement does not provide sufficient compensation or protection for minors whose information was compromised.  Mr. Babu accordingly asks the Court to "reconsider the adequacy of the proposed settlement."  (Filing No. 95.)

The Court will overrule Mr. Babu's objection on the merits, as the Court finds the settlement's terms adequately compensates class members.[2]  The settlement enables settlement class members to receive a cash payment of up to $5,000.00 of losses with presentment of reasonable documentation, or an estimated $50.00 without submission of documentation, depending on the number of valid claims and remaining settlement funds.  (Filing No. 64-1 at 18-19.)  In addition to cash payment, settlement class members also receive one year of bureau credit monitoring and insurance coverage of up to $1,000,000.00 for identity theft.  (Filing No. 64-1 at 19.)  Mr. Babu does not identify how this compensation and free credit monitoring fails to adequately address his claimed losses and concerns regarding the future misuse of his dependent minor's personal information.  (Filing No. 95.)

Simply put, Mr. Babu fails to identify how the settlement is not fair, reasonable, or adequate.  He simply asserts that he does not like what was obtained by the settlement's terms.  (Filing No. 95.)  This basis for an objection is insufficient.  *See Gibson v. Nat'l Ass'n of Realtors*, No. 4:23-cv-00788-SRB, 2026 WL 640989, at *10 (W.D. Mo. Feb. 5, 2026) ("The applicable standard is whether the settlements are fair, reasonable, and adequate—not whether they provide complete relief to all Class members.").  Further, Mr. Babu had the option to opt out of the settlement class to pursue an independent claim on behalf of his dependent minor and did not do so.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 492 (E.D. La. 2020) (By not opting out, "objectors apparently recognize the inherent difficulties and uncertainties associated with pursuing this option, and their actions suggest that final approval of the Settlement is warranted.").  Therefore, Mr. Babu's objection is overruled.

As stated above, the Court finds that the proposed settlement is fair, reasonable, and adequate and that the notice sent to class members satisfied Fed. R. Civ. P. 23(c)(2)(B).  The Court will therefore finally approve the proposed class action settlement.

---

[2]  The Court will note that Mr. Babu's objection did not fully comply with the objection procedure set forth in the Court's Preliminary Approval Order.  (Filing No. 88 at 7-9.)  Specifically, Mr. Babu failed to identify the number of previous objections to class action settlements or identify any legal support for his objection, as required by the objection process approved by the Court.  (*Compare* Filing No. 95 *with* Filing No. 88 at 7-9.)

## II.    Attorneys' Fees

In a certified class action, the Court may award reasonable attorneys' fees and non-taxable costs that are authorized by the parties' agreement.  Fed. R. Civ. P. 23(h).  Settlement class counsel has moved for an award of fees and expenses pursuant to Fed. R. Civ. P. 54(d)(2).  (Filing No. 93.) The proposed settlement agreement provides that class counsel will recover, subject to court approval, attorneys' fees in an amount not to exceed one-third of the total settlement value (or $1,333,333.33), along with costs of this action totaling $29,082.06.  (Filing No. 64-1). The Court bears the responsibility of scrutinizing attorney fee requests, and the burden rests with counsel to establish a factual basis to support the award.  *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).

Courts utilize two main approaches to analyzing a request for attorney fees, the "lodestar" or the percentage-of-the-fund approach.  *Johnston*, 83 F.3d at 244.  Under the "lodestar" methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action.  *Id.*  The percentage-of-the-fund approach—which is requested in this case—permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation. *Id.* at 244-45.  The percentage-of-the-fund method is typically used in common-fund cases.  *Id.  See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) ("It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement").

Under either the lodestar or percentage-of-the-fund method, the Court may determine the reasonableness of the fee award by considering the *relevant* factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974) ("*Johnson* factors"), which include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *In Re Target Corporation Customer Data Security Breach Litig.,* 892 F.3d 968, 977 n.7 (8th Cir. 2018)*.* "[N]ot all of the individual *Johnson* factors will apply in every case, so the [C]ourt has wide discretion as to which factors to apply and the relative weight to assign to each." *In re Xcel Energy, Inc., Securities, Derivative & ERISA Litig.*, 364 F.Supp.2d 980, 993 (D. Minn. 2005).

Here, the requested attorneys' fee—and the amount agreed upon by the parties—is one-third of the total settlement fund. That percentage is well in line with other attorneys' fee awards in this Circuit. *See Rawa v. Monsanto Company*, 934 F.3d 862, 870 (8th Cir. 2019); *In Re Target Corporation Customer Data Security Breach Litig.,* 892 F.3d 968, 977 (8th Cir. 2018); *Keil*, 862 F.3d at 701. Also, the potential award of fees and expenses was disclosed in the notices to class members (Filing No. 93-1), and no specific objections to the amount of the fees or the fact that costs would be deducted from the settlement amount were received. *See In re U.S. Bancorp.*, 291 F.3d 1035, 1038 (8th Cir. 2002). While the Court is aware that the separate negotiation of attorneys' fees may present an opportunity for abuse, the Court finds no basis to suspect any type of abuse or collusion here. *See Johnston v. Comerica Mortg. Corp.,* 83 F.3d at 241, 246 n.11 (8th Cir. 1996).

The relevant *Johnson* factors also support the award of the requested attorneys' fees.[3] The first three factors (the time and labor required; the novelty and difficulty of the questions; and the skill requisite to perform the legal service properly), considered together, support the requested award. *Swinton*, 454 F. Supp. 3d at 876 (stating that these *Johnson* factors "lend themselves to being analyzed in tandem"). Class action suits, particularly those involving data breaches, "are particularly risky, expensive, and complex." *Fox v. Iowa Health Sys*., No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (quoting *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019). Consequently, "[i]t takes lawyers of great skill to navigate the procedural and substantive hurdles inherent in them." *Swinton*, 454 F. Supp. 3d at 876. Given the nature of this action, these *Johnson* factors support the reasonableness of the requested attorneys' fees. Relatedly, *Johnson* factor nine (experience, reputation, and ability

---

[3] *Johnson* factors five and twelve have been previously considered in this Memorandum and Order. Also, factors seven and eleven do not appear relevant in this case.

11

of attorneys) also weighs in favor of the requested attorneys' fees. As stated above, the attorneys involved in this case are accomplished litigators with experience in class actions and complex litigation, such as this case. (Filing No. 64-2.)

*Johnson* factors four (preclusion of other employment by the attorney) and ten (undesirability of the case) also weigh in favor of the requested attorneys' fees. Due to the time commitments associated with a class action suit, and resources necessary to devote to such a case, class counsel necessarily had to forego other litigation opportunities. Also, the associated time commitments and risk that go along with a suit of this kind undermine its desirability.

*Johnson* factor six (fixed or contingent nature of the fee) likewise supports the reasonableness of the attorneys' fees requested. This case was taken on a contingency basis, and therefore class counsel assumed a significant risk of nonpayment or underpayment. (Filing No. 93-1.) If Defendants had prevailed on the merits, class certification, or on appeal, class counsel may have recovered nothing for the time and money they invested in this case. (Filing No. 93-1.) This risk, coupled with the complexity of this action, supports the requested fee.

The eighth *Johnson* factor—the amount involved and the results obtained—has been referred to as the "most critical." *See Hull v. Ne. Legal Grp, LLC*, No. 4:12-cv-3224, 2013 WL 2403327, at *5 (D. Neb. May 31, 2013). The $4,000,000 common fund settlement is a good result, which amounts to a gross recovery of approximately $2.45 per person. This award is consistent with other settlements of this nature. *See, e.g. In re Mednax Services, Inc. Customer Data Sec. Breach Litig..*, No. 21-MD-02994-RAR (S.D. Fla.) (data breach class action involving 2.7 million individuals" that settled for $6 million - approximately $2.22 per class member); *In re R&B Corp of Virginia dba Credit Control Corp.,* No. 4:23-cv-00066-JKW-RJK (E.D. Va) (data breach class action involving 731,744 people that settled for $1,613,300 million - approximately $2.20 per class member).

In sum, given the time and skill necessary to litigate this case, including an appeal, and the result obtained in a contingency-fee case, the Court finds that the requested attorney's fees and non-taxable costs are reasonable, and will grant them.

III.    **Litigation Expenses and Claims-Administration Costs**

The Court further finds that the expense reimbursement request is reasonable. The settlement agreement provides that class counsel may request reimbursement of expenses incurred in prosecuting and settling this suit. (Filing No. 64-1.) Counsel seeks reimbursement of $29,082.06 in litigation costs. (Filing No. 99.) Given the nature and complexity of this case, the expenses requested are reasonable and will be approved. *See US. Bancorp Litig.,* 291 F.3d at 1037 (upholding a costs award of $40,000 as appropriate where the parties' settlement resulted in a $3 million common fund); *Woodard v. Navient Sols., LLC,* No. 8:23-cv-301, 2024 WL 94468, at *9 (D. Neb. Jan. 9, 2024) (finding $86,562.76 in expenses to be "reasonable in light of the multi-year . . . litigation that led to this settlement").

In this case, administrative costs and litigation expenses are to be paid from the settlement fund. (Filing No. 93-1.) The total amount of administrative costs to date is $807,994.83, with an *estimated* additional amount of $140,481.65. (Filing No. 100.) *See Caligiuri v. Symantec Corp.,* 855 F.3d 860, 865-66 (8th Cir. 2017) (explaining "it is common for courts to approve settlements after receiving only estimates of administrative costs" because those costs "continue to accrue throughout" the claims administration process). "Settlement administrator costs are routinely reimbursed in class action settlements." *Almanzar v. Home Depot U.S.A., Inc.,* No. 2:20-cv-0669, 2024 WL 36175, at *11 (E.D. Cal. Jan. 3, 2024). *See In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.,* 847 F.3d 619, 623 (8th Cir. 2017).

There is no suggestion here—from a party or settlement class member—that the administrative costs were unjustifiable. Further, the Court has surveyed other data breach cases involving a comparable number of settlement class members and finds the settlement administrator's costs here fall within an acceptable range. *See, e.g., Woodard,* 2024 WL 94468 at *9 (finding $500,000 requested from the common fund for notice and claims-administration expenses to be reasonable); *In re Novant Health, Inc.,* No. 1:22-CV-697, 2024 WL 3028443 (M.D.N.C. June 17, 2024). As detailed above, by the date of the hearing, settlement administrators had already expended significant effort to effectuate notice to the approximate 1.6 million potential class members. Therefore, the Court finds the amount requested for claims administration expenses to be reasonable.

IV.    **Service Award**

The class representative seeks a service award of $2,500 for each of the eight class representatives.  (Filing No. 93).  It is within the Court's discretion to award service awards to a plaintiff who served as a class representative, considering the actions he took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort he expended in pursuing the litigation.  *See Caligiuri*, 855 F.3d at 867.  There has been no objection to the service award proposed here, and the Court finds that it is fair, reasonable, and properly based in the benefit to the class members generated by the litigation.  The Court will approve the award.

Accordingly,

**IT IS ORDERED:**

1.    Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards to Plaintiffs and Final Approval of Class Action Settlement (Filing No. 93) is granted.

2.    The objection to the Settlement Agreement (Filing No. 95) is overruled.

3.    The Settlement Agreement (Filing No. 64-1) is approved in all respects, and the parties are directed to perform and satisfy the terms and conditions of the Settlement Agreement.

4.    This Order incorporates and makes a part hereof: (a) the Class Action Settlement Agreement and Release (the "Settlement Agreement"), including the definitions in the Settlement Agreement and (b) the Notices attached as Exhibits thereto, respectively, all of which were filed with the Court on October 7, 2025.  All terms used in this Order have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein.

5.    Pursuant to Fed. R. Civ. P. 23, this Court certifies, solely for purposes of effectuating the Settlement, this Action as a class action on behalf of a Settlement Class defined as:

> All living individuals residing in the United States who were sent a notice from ALN Medical Management LLC of the Data Incident, which occurred in March of 2024, indicating their Private Information may have been impacted in the Data Incident (the "Settlement Class Members").

6. The Settlement Class specifically excludes: (1) all persons who are parents, subsidiaries, directors, officers, members, and agents of Defendant ALN, and any entity in which Defendant has a controlling interest; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and that Judge's chamber's staff; (4) all individuals who timely opt-out of the Settlement; and (5) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident, or who pleads *nolo contendere* to any such charge.

7. Plaintiffs Cameron Reed, Eugene Rosenberg, Lauren Mullis, Jeffrey Judka, Virginia Gilleland, Robert Meyers, Caroline Hurley, and Timothy Keggins ("Class Representatives") are hereby appointed, for settlement purposes only, as Representatives for the Settlement Class for purposes of Fed. R. Civ. P. 23.

8. Jeff Ostrow of Kopelowitz Ostrow P.A., Andrew Shamis of Shamis & Gentile, P.A., and John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC are hereby appointed, for settlement purposes only, as counsel for the Settlement Class pursuant to Fed. R. Civ. P. 23(c)(1)(B) and (g).

9. The Court finds that the dissemination of Notice to Settlement Class Members: (a) was implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of the Action; (ii) their right to submit a claim (where applicable) by submitting a Claim Form; (iii) their right to exclude themselves from the Settlement Class; (iv) the effect of the proposed Settlement (including the releases to be provided thereunder); (v) Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards; (vi) their right to object to any aspect of the Settlement, and/or Class Counsel's

15

Application for Attorneys' Fees, Costs, and Service Awards; and (vii) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all natural persons entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States (including the Due Process Clause), and all other applicable laws and rules.

10. The notice to government officials, as given, complied with 28 U.S.C. § 1715.

11. Pursuant to Fed. R. Civ. P. 23(e)(5), Class Members had the opportunity to file objections. There was one objection (Filing No. 95), which the Court overruled.

12. Pursuant to, and in accordance with, Fed. R. Civ. P. 23, this Court hereby fully and finally approves the Settlement set forth in the Settlement Agreement in all respects (including, without limitation: the consideration provided for in the Settlement; the releases provided for therein; and the dismissal with prejudice of the claims asserted against all Named Defendants with the exception of Defendant Long View Systems Corporation (USA) in the Action), and finds that the Settlement is, in all respects, fair, reasonable and adequate to the Settlement Class. The Court finds that, pursuant to Rule 23(e)(2), (A) the Class Representatives and Class Counsel have adequately represented the Settlement Class; (B) the Settlement was negotiated at arm's length; (C) the relief provided for the Settlement Class is fair, reasonable, and adequate taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the Settlement Class, including the method of processing Settlement Class Member claims; (iii) the terms of the proposed award of attorneys' fees and reimbursement of costs and other expenses, as well as the Service Awards to the Class Representatives; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the Settlement treats Settlement Class Members equitably relative to each other. The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Settlement Agreement.

13. The terms of the Settlement Agreement and of this Order shall be forever binding on all Named Defendants with the exception of Defendant Long View Systems Corporation (USA), Plaintiffs, and all Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form, seeks or obtains a Settlement Class Member Benefit, or objected to the Settlement), as well as their respective successors and assigns.

14. The persons listed on Exhibit 1 (Filing No. 98), incorporated by this reference, submitted timely and proper Requests for Exclusion, are excluded from the Settlement Class, and are not bound by the terms of the Settlement Agreement or this Order.

15. The releases set forth in Section 13 of the Settlement Agreement are expressly incorporated herein in all respects.  The releases are effective as of the Effective Date. Accordingly, this Court orders pursuant to this Order, without further action by anyone, upon the Effective Date of the Settlement, and as provided in the Settlement Agreement, that Plaintiffs, Releasing Parties, and each and every member of the Settlement Class (except those individuals whose names appear on Exhibit 1 (Filing No. 93-3 at 7)) shall have released the Released Claims against the Released Parties. Notwithstanding the foregoing, nothing in this Order shall bar any action by any of the Parties to enforce or effectuate the terms of the Settlement Agreement or this Order.

16. Plaintiffs, Releasing Parties, and all Settlement Class Members are hereby barred and permanently enjoined from instituting, asserting, or prosecuting any or all of the Released Claims against any of the Released Parties.

17. The Court hereby decrees that the Settlement, this Order, and the fact of the Settlement do not constitute admissions or concessions by Defendant ALN or any of the Released Parties of any fault, wrongdoing, or liability whatsoever, or an admission of the appropriateness of class certification for trial or dispositive motion practice.  This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Nothing relating to the Settlement shall be offered or received in evidence as an admission, concession, presumption or inference against Defendant ALN or any of the Released Parties in any proceeding, other than such proceedings as

17

may be necessary to consummate or enforce the Settlement Agreement or to support a defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense.

18.    Class Counsel are awarded attorneys' fees in the amount of one-third of the Settlement Fund and reimbursement of costs and expenses in the amount of $29,082.06, and such amounts shall be paid by the Settlement Administrator pursuant to and consistent with the terms of the Settlement.

19.    The Class Representatives are awarded Service Awards in the amount of $2,500.00 to each Class Representative, and such amount shall be paid by the Settlement Administrator pursuant to and consistent with the terms of the Settlement Agreement.

20.    Without further approval from the Court, Plaintiffs, by and through Class Counsel, and Defendant ALN are hereby authorized to agree to and adopt such amendments or modifications of the Settlement Agreement or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Order; and (b) do not materially limit the rights of members of the Settlement Class in connection with the Settlement.  Without further order of the Court, Plaintiffs, by and through Class Counsel, and Defendant ALN may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

21.    Without affecting the finality of this Order in any way, the Court hereby retains and reserves jurisdiction over: (a) implementation of this Settlement and any distributions pursuant to the Settlement; (b) the Action, until the Effective Date and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of the Settlement Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of interpreting, implementing, and enforcing the settlement embodied in the Settlement Agreement.

22.    The Action will be dismissed with prejudice as to all Named Defendants with the exception of Defendant Long View Systems Corporation (USA).  The Parties shall bear

18

their own costs and expenses, except as otherwise expressly provided in the Settlement Agreement.

Dated this 15th day of May, 2026.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge